

# SUPREME COURT OF MISSOURI
## en banc

| | |
|---|---|
| CITY OF HARRISONVILLE, ET AL., ) | *Opinion issued December 19, 2023* |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | No. SC100043 |
| ) | |
| MISSOURI DEPT. OF NATURAL ) | |
| RESOURCES, ) | |
| ) | |
| and ) | |
| ) | |
| BOARD OF TRUSTEES FOR THE ) | |
| PETROLEUM STORAGE TANK ) | |
| INSURANCE FUND, ) | |
| ) | |
| Respondents. ) | |

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY**
**The Honorable Daniel R. Green, Judge**

The City of Harrisonville and Brad Ratliff (collectively, "the City") appeal the circuit court's judgment overruling their motion for summary judgment and sustaining the Missouri Department of Natural Resources ("MDNR") and the Board of Trustees for the Petroleum Storage Tank Insurance Fund ("the Fund Board")'s motion for summary judgment. The City's brief violates multiple provisions of Rule 84.04. Because these violations substantially impede appellate review, the appeal is dismissed.

## Facts and Procedural History

MDNR is an executive branch agency responsible for the conservation and management of natural resources, including the regulation of underground petroleum storage tanks. The Petroleum Storage Tank Insurance Fund ("the Fund") is a special trust fund within the state treasury. The Fund reimburses allowable costs for the clean-up of petroleum contamination from certain petroleum storage tanks. The Fund is operated by the Fund Board. At all relevant times, Carol Eighmey was the executive director of the Fund. While she was still the director, MDNR and the Fund Board chairperson received a letter concerning Eighmey's conduct.

The City filed a Sunshine Law request to MDNR, requesting production of the letter and any correspondence regarding the letter. The City filed a second Sunshine Law request, this time requesting production of all correspondence between MDNR and all other public entities regarding the first request. MDNR produced some records, but also included a privilege log and an explanation that some records were closed, pursuant to § "610.021 (1), (3), and (13) and potentially (14)[.]"[1]

The City then filed suit against MDNR, alleging MDNR knowingly violated Missouri's Sunshine Law. The Fund Board intervened, and both parties filed motions for summary judgment. The Fund Board argued it was entitled to judgment as a matter of law because the records the City sought were "closeable under § 610.021(3) RSMo, § 610.021(13) RSMo, or both of these sections." The circuit court, after reviewing the

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

documents *in camera*, sustained MDNR and the Fund Board's motion and overruled the City's motion, stating in pertinent part:

> 6. The Court finds that [the letter] is by its nature an employment personnel record and relate [sic] to personnel issues.
>
> 7. The Court finds that the e-mails that were closed by Defendant related to a closed document and/or contained privileged communications not subject to disclosure.
>
> 8. The Court further finds the Missouri legislature intended to protect governmental employees' privacy rights when drafting Sections 610.021.3 and 610.021.13 RSMo.
>
> 9. Defendant did not commit a "knowing or purposeful violation" of the Missouri Sunshine Law.

The City appealed. After the court of appeals affirmed the judgment, this Court granted transfer and has jurisdiction. Mo. Const. art. V, § 10.

## Analysis

### I.

Rule 84.13(a) provides "[a]part from questions of jurisdiction of the trial court over the subject matter, allegations of error not briefed or not properly briefed shall not be considered in any civil appeal[.]" As established below, and as required by Rule 84.13(a), the City's failure to properly brief any allegation of reversible error requires dismissal of the appeal.

The point relied on is a central, indispensable element of an appellate brief because it defines a specific issue for this Court's review. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). Rule 84.04(d)(1), therefore, requires the point relied on to: (1) identify the challenged trial court ruling or action; (2) state concisely the legal reasons

3

for the claim of reversible error; and (3) "[e]xplain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." A properly drafted point relied on is essential to this Court's review because it notifies "the opposing party of the precise matters which must be contended" while informing this Court of the specific "issues presented for review." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). A noncompliant point relied on that fails to meet these essential purposes impedes the adversarial process and, by extension, this Court's impartial review of a specific claim of reversible error. *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978). For these reasons, this Court has repeatedly held that a point relied on that does not properly state the legal reasons for a specific claim of reversible error "preserves nothing for appellate review." *Storey v. State,* 175 S.W.3d 116, 126 (Mo. banc 2005); *see also Fowler v. Mo. Sheriffs' Ret. Sys.*, 623 S.W.3d 578, 583 (Mo. banc 2021).[2]

Because of the critical importance of a proper point relied on, this Court has provided in Rule 84.04(d)(1) a roadmap enabling an appellant to draft a compliant point relied on by literally filling in the blanks of the following template:

---

[2] This Court's emphasis on the necessity of adhering to the briefing rule is not new. For more than a century, this Court has repeatedly dismissed appeals or specific points for noncompliance with this Court's briefing rules. *See Vahldick v. Vahldick*, 175 S.W. 199, 200 (Mo. 1915) (dismissing an appeal for a noncompliant "assignment of error"); *Jacobs v. Stone*, 299 S.W.2d 438, 440 (Mo. 1957) (dismissing an appeal for violating the briefing rules because "[j]ustice demands that cases be correctly and speedily determined" and "[t]his cannot be completely and surely done unless the causes appealed and submitted to the appellate court are properly briefed"); *Thummel,* 570 S.W.2d at 690 (holding dismissal is appropriate for points that do not comply with this Court's briefing requirements); *State v. Smith*, 781 S.W.2d 761, 766 n.4 (Mo. banc 1989) (stating that, prospectively, all briefs violating the briefing rules and exceeding the page limit will not be considered); *Lexow*, 643 S.W.3d at 509-10 (dismissing an appeal for noncompliant points relied on).

The point shall be in substantially the following form: The trial court erred in [identify the challenged ruling or action], because [state the legal reasons for the claim of reversible error] in that [explain why the legal reasons, in the context of the case, support the claim of reversible error].

(Emphasis omitted).

"A deficient point relied on requires the respondent and appellate court to search the remainder of the brief to discern the appellant's assertion and, beyond causing a waste of resources, risks the appellant's argument being understood or framed in an unintended manner." *Lexow*, 643 S.W.3d at 505. If this Court excuses an appellant's failure to follow this "simple, mandatory format" and attempts to discern some specific argument obscured by a noncompliant point, this Court necessarily abandons the role of neutral arbiter and, instead, assumes an improper "advocacy role" on the appellant's behalf. *Bowers v. Bowers*, 543 S.W.3d 608, 619 (Mo. banc 2018) (Fischer, C.J., concurring). Doing so not only condones improper briefing, it also creates an unnecessary risk of deciding a case and establishing precedent based on inadequate briefing. *Thummel*, 570 S.W.2d at 686.

None of the City's three points comply with the basic requirements of Rule 84.04(d). The City's first point relied on states:

The Circuit Court and Court of Appeals Erred in Closing the Walters Letter Pursuant to RSMo. 610.021(3) in that the Walters Letter Never Related to the Hiring, Firing, Discipline, or Promotion of a State Employee.

Point I violates Rule 84.04(d)(1) because it fails to identify the challenged circuit court ruling or explain why, in the context of the case, those legal reasons support the claim of reversible error. These omissions are fatal because reversible errors are only those "committed by the trial court against the appellant materially affecting the merits of the

5

action." Rule 84.13(b). To make sense of Point I, this Court would have to scour the record and construct a theory of reversible error on the City's behalf. This Court is a neutral arbiter, not an advocate. The City's failure to identify the legal reasons for its purported claim of reversible error precludes appellate review.

In addition to the failure to identify any alleged reversible error in the circuit court's judgment, Point I is also based on a non-cognizable claim that the court of appeals erred. The right to appeal is "purely statutory," *Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC*, 578 S.W.3d 758, 760 (Mo. banc 2019), and § 512.020 generally authorizes an appeal by any party "aggrieved by any judgment of any ***trial court*** in any civil cause." (Emphasis added). There is no appeal from a court of appeals decision, and the court of appeals opinion is vacated when this Court transfers an appeal. *Lexow*, 643 S.W.3d at 507. As Rule 84.04(d) makes clear, this Court reviews claims of "trial court" error, not appellate court error.

To the extent the City purports to appeal from the court of appeals' vacated decision, the appeal is based on a fundamental misunderstanding of the appellate process and fails to state any cognizable claim of reversible error in the circuit court's judgment. *Id.* at 506-07.[3] Because the City failed to identify the legal reasons for any claim of reversible circuit court error and rests on a non-cognizable claim the court of appeals erred, Point I is dismissed.[4]

---

[3] *See also* Rule 84.13(b) (providing reversible errors are those "committed by the trial court against the appellant materially affecting the merits of the action").

[4] In addition to violating Rule 84.04(d), the City violated Rule 84.04(e) by not providing a preservation statement for any of its three points relied on. Demonstrating preservation is

The City's second point relied on is similarly flawed. The City states:

> The Court of Appeal's [sic] Review Was Not a True De Novo Review of the Circuit Court's Judgment in that Respondents Did Not Submit All Documents Relied Upon by The Circuit Court in Rendering Its Judgment.

Like Point I, Point II fails to follow the template provided by Rule 84.04(d)(1) while stating a non-cognizable claim that the court of appeals erred. This purported claim is categorically unreviewable. *Lexow*, 643 S.W.3d at 506-07. Point II is dismissed.

Finally, the City's third point relied on states:

> The MDNR Knowingly Violated the Sunshine Law in that it Withheld the Walters Letter and Other Communications in Their Entirety Without Producing Redacted Versions.

Like Points I and II, Point III does not follow the template provided by Rule 84.04(d), while also failing to identify any claim of reversible error in the circuit court's judgment. Point III is dismissed.

This Court does not lightly dismiss an appeal.[5] But this Court also does not lightly decline to follow its own briefing rules, promulgated pursuant to this Court's constitutional

---

necessary because "nothing is preserved for review if the question was not properly presented to the trial court in the first instance." *Thummel*, 570 S.W.2d at 685. Rule 84.04(e) places the burden of demonstrating preservation on the appellant, not this Court.

[5] The dissenting opinion cites *Williams v. Hubbard*, 455 S.W. 3d 426, 432 (Mo. banc 2015), for the proposition this Court should just pretend the appellant did not file a substitute brief despite the fact Rule 83.03(b) provides, if a party chooses to file a substitute brief, the "substitute brief shall conform to Rule 84.04, [that it] shall include all claims the party desires this court to review." There is no denying this Court failed to follow its own briefing rules in *Williams* and just reviewed the abandoned briefs that were filed in the court of appeals. There is also no denying there was no precedent for this Court to create that remedy rather than dismiss the appeal. Finally, there is no denying both before and after the apparent aberration in *Williams*, this Court has dismissed appeals for failing to follow brief rules. *See Thummel,* 570 S.W.2d at 688 (finding a defective multifarious point relied on violates Rule 84.04(d) and is subject to dismissal); *Smith v. City of St. Louis*, 395 S.W.3d 20, 28 (Mo. banc 2013) ("Plaintiff's third and fourth points are dismissed for failure to

7

authority to regulate court procedure pursuant to article V, section 5 of the Missouri Constitution. This Court has an obligation to create and maintain a level playing field for all parties. One of the surest ways to do this is to consistently enforce this Court's simple, straightforward rules governing points relied on. This Court has long recognized the importance of following these and other briefing rules because:

> They fill no office of mere red tape, or as a show of surface routine. To the contrary, they have substance, and carry on their face the obvious purpose to aid appellate courts in getting at the right of a cause. Hence, apparently, they bespeak the dignity arising from obedience. If they are not to be obeyed, they should be done away with once for all.

*Sullivan v. Holbrook*, 109 S.W. 668, 670 (Mo. 1908).

## II.

Furthermore, even if this Court were to review the City's appeal *ex gratia*, the circuit court's judgment would be affirmed because the City's non-compliant points relied on only purport to appeal the summary judgment based on subsection (3) and not subsection (13) of § 610.021, and summary judgment was granted on both sections. The law is clear when the circuit court does not state the explicit reasoning for sustaining a motion, appellate courts presume it was based on the reasons set forth in the motion for summary judgment. *Citizens for the Preservation of Buehler Park v. City of Rolla*, 187 S.W.3d 359, 361 (Mo. App. 2006); *Comp & Soft, Inc. v. AT&T Corp.*, 252 S.W.3d 189, 194 (Mo. App. 2008).

MDNR and Fund Board claimed they were authorized to close the records pursuant to both § 610.021(3) and § 610.021(13), and the circuit court, in holding the records were

---

comply with Rule 84.04."); *Lexow*, 643 S.W.3d at 509-10 (Mo. banc 2022) (dismissing unanimously the of appeal for 84.04 violations).

related to personnel issues, specifically relied on both subsection in its judgment. If this Court were to gratuitously review a claim of error and reversed the summary judgment against the City related to subsection (3), the circuit court's summary judgment closing the record pursuant to § 610.021(13) was not appealed.[6] As both independent legal bases for summary judgment were not appealed, the circuit court's judgment must be affirmed.

## Conclusion

Because all three of the City's points relied on are fundamentally noncompliant with the basic requirements of Rule 84.04(d), the appeal is dismissed. Rule 84.13(a).

_____

Zel M. Fischer, Judge

Ransom and Broniec, JJ., concur;
Powell, J., concurs in part with Section II
of principal opinion; Wilson, J., dissents in
separate opinion filed; Russell, C.J., concurs
in opinion of Wilson, J.
Gooch, J., not participating.

_____

[6] This Court makes no determination as to the merits of summary judgment alternatively based on subsection (13), but must point out no claim of error regarding the judgment based on subsection (13) is even remotely argued by the City.

9



# SUPREME COURT OF MISSOURI
## en banc

CITY OF HARRISONVILLE, et al., )
)
)
Appellants, )
)
v. ) No. SC100043
)
MISSOURI DEPT. )
OF NATURAL RESOURCES, )
)
AND )
)
BOARD OF TRUSTEES )
FOR THE PETROLEUM )
STORAGE TANK INSURANCE FUND, )
)
Respondents. )

### DISSENTING OPINION

The principal opinion dismisses the City's appeal because its brief fails to comply

with the requirements of Rule 84.04(d) and suggests, even if it reviewed the merits of the

City's arguments, it would affirm because the City's substitute brief did not challenge

both of the independent bases for the circuit court's judgment, i.e., subdivisions (3) and

(13) of section 610.021.[1]  Respectfully, I dissent.

---

[1]  All statutory references are to RSMo Supp. 2018 unless otherwise noted.

1

The principal opinion's decision to dismiss the City's appeal is both unnecessary and out of step with this Court's precedent. Worse, it gives the state the benefit of the circuit court's incorrect interpretation of Missouri's sunshine law, not just in this case but in all future instances until this misreading is corrected. I am not suggesting the Court turn a blind eye to the City's violations of Rule 84.04(d), but dismissing this appeal sacrifices the important public policy set forth in the sunshine law for no return. Instead, following precedent, this Court should strike the City's substitute brief but proceed on the merits of the arguments set forth in its court of appeals brief filed, which has no fatal Rule 84.04 flaws. There, the City claimed (correctly) that the circuit court erred when it held the Walters Letter did not need to be disclosed under either of the sunshine law exceptions in subdivisions (3) and (13) of section 610.021. This Court should reverse the circuit court's judgment because the Walters Letter did not directly relate or have a clear nexus to either exception and should have been released pursuant to the City's request.

**The City's Substitute Brief**

This appeal is before the Court because the City, unhappy with the result in the court of appeals, filed an application to transfer pursuant to Rule 83.04. After this Court granted the City's application, the City filed a substitute brief pursuant to Rule 83.08(b). The Court welcomes parties to file substitute briefs to further hone their arguments before this Court, but they are not required to do so. Instead, after transfer, any party may choose to rely on the briefs filed in the court of appeals. If a party does choose to file a substitute brief, Rule 83.08(b) provides the "substitute brief shall conform with Rule 84.04 [and] shall include all claims the party desires this Court to review."

2

To be sure, the City's substitute brief falls far short of the simple requirements set forth in Rule 84.04(d). As explained in the principal opinion, the City makes the all-too-frequent mistake of asserting the court of appeals erred in this or that respect, which is anathema to article V of the Missouri Constitution and the role this Court plays in appellate review. The City fails to understand that, once transfer is ordered, this Court does not review the work of the court of appeals but stands in its stead. *See* Rule 83.09 (providing, unless the matter is retransferred, every appeal that comes to this Court from the court of appeals will be decided "the same as on original appeal").

It appears this misunderstanding was the source of the City's decision to file a substitute brief that, as the principal opinion explains, contains only deficient points relied on. Worse, as the principal opinion notes in its parting footnote, it appears this misunderstanding accounts for the City's decision to focus its substitute brief exclusively on the circuit court and appellate court's misapplication of section 610.021(3), omitting any challenge to the alternate basis for the circuit court's judgment, i.e., section 610.021(13).

But the principal opinion decision to dismiss the City's appeal as a sanction for its failure to abide by Rule 84.04(d) is unnecessary, out of proportion, and not in keeping with precedent. True, the City's substitute brief contains material and repeated violations of Rule 84.04(d). But the proper sanction is to the strike the noncompliant brief, not dismiss the appeal. Protecting the purposes of Rule 84.04(d) by striking this noncompliant brief should leave the City in exactly the same position it would have been in had it chosen not to file a substitute brief at all; no better, but certainly no worse. Had

3

the City elected not to file a substitute brief, this Court would have reviewed the merits of the claims properly set forth in the City's original brief filed in the court of appeals. The same should occur when the City files a brief here that is stricken for failure to comply with Rule 84.04(d).

This is the approach this Court took in *Williams v. Hubbard*, 455 S.W.3d 426, 432 (Mo. banc 2015). There, the appellant labored under the same misunderstanding burdening the City in this case, i.e., its substitute brief responded to the court of appeals' analysis rather than the result reached in the circuit court. *Id*. at 431. But this Court refused to dispose of the appeal due solely to the briefing defects under Rule 84.04(d).

> Under Rule 83.03(b), if Williams had not filed a substitute brief, the Court would proceed on the basis of the brief Williams filed in the court of appeals. Accordingly, the Court will strike Williams' substitute brief and proceed as though it had not been filed. This approach best balances the need to enforce Rule 84.04(d) and the Court's policy "to decide a case on its merits" whenever possible.

*Id.* at 432 (quoting *J.A.D. v. F.J.D.,* 978 S.W.2d 336, 338 (Mo. banc 1998)).

By taking the approach used in *Williams* and striking the City's substitute brief but proceeding on its court of appeals brief, there is no risk this Court will be lured into acting as an advocate for the City. The Court need address only the points raised by the City in its court of appeals brief just as it would have done had the City chosen not to file the defective brief at all; nor would Respondents suffer any prejudice if the City's substitute brief is stricken. Respondents' brief in the court of appeals fully addresses the City's claims under subdivisions (3) and (13) of section 610.021, and its substitute brief restates and refines these arguments. As was the case in *Williams*, 455 S.W.3d at 432

4

n.5, the only party injured by the City's failure to follow this Court's rules is the City, and then only to the extent it lost the opportunity to hone its arguments as Respondents did in their substitute brief. More important, this Court would address the arguments the City properly raised in the court of appeals—meritorious arguments concerning the circuit court's serious misstatement of important provisions of Missouri's sunshine law.

The City's court of appeals brief argues the circuit court erred in holding that the Walters Letter was properly withheld under either of the sunshine law exceptions in subdivisions (3) or (13) of section 610.021. This dissenting opinion agrees and would hold neither exception applies and the Walters Letter should have been disclosed.

## SUBDIVISIONS (3) AND (13) OF SECTION 610.021

### A. STANDARD OF REVIEW

In review of a circuit court's grant of summary judgment, this Court uses a *de novo* standard of review. *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The grant of summary judgment is an issue of law, and an appellate court does not defer to the circuit court's decision. *Id.* This Court reviews the record in the light most favorable to the party against whom summary judgment was entered. *Id.*

According to the rules of statutory construction, words should be given their plain and ordinary meaning whenever possible. *State ex rel. Fitz-James v. Bailey*, 670 S.W.3d 1, 6 (Mo. banc 2023). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used and to give effect to that intent if

5

possible." *Id.* (internal quotation omitted). When interpreting statutes, this Court should "avoid unreasonable or absurd results." *Id.*

Section 610.011 expressly states the General Assembly's intent with regard to section 610.021. According to section 610.011.1, "It is the public policy of this state that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public." The General Assembly has specified that Missouri's sunshine law should be liberally construed in favor of disclosure, and its exceptions strictly construed to promote this policy. § 610.011.1.

**B. The Walters Letter is not protected from disclosure under section 610.021(3) because it does not directly relate to or have a clear nexus with the "hiring, firing, disciplining, or promoting of a state employee"**

Generally, under Missouri's sunshine law, governmental records and documents are open to request by the public. § 610.011. However, section 610.021 lists a number of exceptions to this policy. These exceptions authorize (but do not require) meetings and records to be closed in certain situations despite Missouri's policy favoring open records. One such exception is found in section 610.021(3), which provides:

> Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records, and votes, to the extent they ***relate to*** the following … (3) [h]iring, firing, disciplining, or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded.

(Emphasis added).

The Missouri Department of Natural Resources ("MDNR") argues the Walters Letter was exempt from disclosure under section 610.021(3) because it purports to convey an outsider's assessment of a state employee's job performance. Therefore,

6

according to MDNR, the letter and any discussion about it may be closed regardless of what – or even whether – any employment action was taken.  In contrast, the City argues MDNR's reading of the statute is too broad, and it is not enough that the letter pertained to an outsider's assessment of a state employee's job performance and that such an assessment might (but, in this case, did not) result in MDNR hiring, firing, disciplining or promoting the employee if MDNR had agreed with the outsider's assessment.  I agree.

For the record to be closed under section 610.021, the requested document must relate ***directly*** to one of the 25 exceptions enumerated in section 610.021.  *Spradlin v. City of Fulton*, 982 S.W.2d 255, 259 (Mo. banc 1998) (holding the government bears the burden of establishing that the record "***relates directly"*** to the sunshine law exception).  Instead, to fall into one of the exceptions found in section 610.021 there must be a ***clear nexus*** between the exception and the record in question.  *Tuft v. City of St. Louis*, 936 S.W.2d 113, 118 (Mo. App. 1996) (holding the governmental body bears a heavy burden of demonstrating a ***clear nexus*** between the document sought and the relevant exception); *Wyrick v. Henry*, 592 S.W.3d 47, 57 (Mo. App. 2019) (same).  Accordingly, under section 610.021(3), the requested record must be disclosed upon request unless it relates directly to – or there is a clear nexus between the document and – the "[h]iring, firing, disciplining, or promoting" of a state employee.  It is not enough that the record in question recounts an event or offers an assessment of the state employee's job performance which, if shared by MDNR, could have resulted in an employment action.

Here, the Walters Letter was sent to MDNR's Director by a third party who worked with MDNR.  The letter contained accusations of misbehavior by state employee

7

Carol Eighmey. The letter did not directly relate to the "hiring, firing, disciplining, or promoting" of Eighmey because Walters, as an outsider, had no authority to take such actions; nor is there a clear nexus between the Walters Letter and the "[h]iring, firing, disciplining, or promoting" of Eighmey. She retired on her own accord in 2020. There is nothing in the record to suggest that any employment action was ever taken regarding Eighmey, or that the Walters Letter ever caused MDNR to consider such an action.

Instead, the Walters Letter merely set forth an outsider's allegations that Eighmey had engaged in unethical behavior. Because no employment action was ever taken or considered based on the letter – or on the behavior alleged in the letter – the Walters Letter did not directly relate to or have a clear nexus with the hiring, firing, disciplining, or promoting of any state employee such that it could be withheld from disclosure under section 610.021(3). To stretch this exception to cover documents created by nongovernmental sources that conceivably might have, but certainly never did, concern behavior for which a governmental employee might be hired, fired, disciplined or promoted would make a mockery of section 610.011's admonition that exceptions to Missouri's sunshine law must be strictly construed. Accordingly, I would hold the circuit court erred in finding the Walters Letter did not need to be disclosed under section 610.021(3).

**C. The Walters Letter also is not protected from disclosure under section 610.021(13) because it does not directly relate to or have a clear nexus with individually identifiable personnel records, performance ratings, or records**

The circuit court determined that, whether section 610.021(3) applied or not, section 610.021(13) provided an independent basis for the state not to disclose the Walters Letter when requested. That exception provides:

> Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records, and votes, to the extent they ***relate to*** the following … (13) [i]ndividually identifiable personnel records, performance ratings, or records pertaining to employees or applicants for employment.

(Emphasis added). The City claims section 610.021(13) did not authorize MDNR to refuse to disclose the Walters Letter because it was simply a complaint from a third party, not a personnel record or performance rating. I agree.

Section 610.021(13) does not define what is considered a personnel record. MDNR's assertion that the Walters Letter can be withheld under section 610.021(13), however, suffers the same faults and overreaching as its argument concerning section 610.021(3). As with section 610.021(3), section 610.011 requires that section 610.021(13) be narrowly construed. Stretching the exception for personnel records and performance ratings to cover complaint letters from nongovernmental outsiders cannot be justified. One might imagine all or nearly all the correspondence state agencies and departments receive relates in some degree to actions taken by a governmental employee. According to MDNR, however, all such correspondence could be closed under Missouri's sunshine law because they are "personnel records" or "performance ratings or

9

records." Nothing in section 610.021(13) even remotely suggests this is what the General Assembly intended.

For the reasons already set forth above regarding section 610.021(3), the state must show the records it seeks to withhold under section 610.021(13) directly relate to or have a clear nexus with a state employee's "personnel records" or "performance ratings or records." Not every scrap of paper in the government's possession is a "personnel record" merely because it has some distant relationship to a governmental employee, nor is it a "performance rating or record" merely because it conveys some outsider's view concerning how a state employee does his or her job.

There is nothing in this record showing the Walters Letter was a part of Eighmey's (or anyone else's) personnel file or, even if it were part of that file, that MDNR had no copies of the Walters Letter that were not a part of a personnel file; nor does the record show that MDNR had any policy or practice to populate its personnel files with every complaint from outside the governmental agency or treat such complaints as personnel ratings. Instead, this is simply a threadbare argument seeking to withhold from the sunshine law a document neither the state nor its employees created by trying to connect that document to some employment action or personnel file. That connection is remote, at best, and falls short of the direct relationship or clear nexus that sections 610.011, 610.021(3), and 610.021(13) require.

## CONCLUSION

Missouri's sunshine law recognizes that full and complete disclosure of public records is an essential public policy to have but a difficult policy to enforce. The courts

10

are tasked with ensuring the sunshine law is properly understood and consistently applied, and this Court must be vigilant in that work. The principal opinion misses an opportunity to make progress on this difficult road, choosing instead to dismiss this appeal on grounds that, though they are important, are not important enough to justify leaving in place the circuit court's erroneous construction and dangerous application of Missouri's sunshine law. Accordingly, I respectfully dissent.

I would sanction the City's failure to comply with Rule 84.04(d) by striking the City's substitute brief and requiring it to proceed in this Court on the brief it filed in the court of appeals. I believe the claims asserted in the City's original brief have merit and would hold MDNR failed to show the Walters Letter is directly related to or has a clear nexus with the "[h]iring, firing, disciplining, or promoting" of – or an "[i]ndividually identifiable personnel record" or a "performance rating or record" of – some particular state employee. Accordingly, I would reverse the circuit court's holding that MDNR properly withheld the Walters Letter under either subdivision (3) or (13) of section 610.021.

_____
Paul C. Wilson, Judge

11